We are now recording. Hear ye, hear ye, this Honorable Appellate Court of the Judicial District is now in session. The Honorable Mary S. Shostok presiding. Your honors, the second case on the docket this morning is 2-21-0707. Will Oaks, LLC, Plaintiff Appellee v. Rubina Hospitality, LLC and Sohail Shakur Defendant's Appellants. Arguing for the appellant, Mr. Robert L. Dwitiak. Arguing for the appellee, Mr. Kevin A. Sterling. Morning, gentlemen. Mr. Dwitiak, are you ready to proceed? I am, your honor. You may proceed. May it please the court. My name is Robert Dwitiak. I will be making the argument for the appellant this morning. Quickly, just through a couple of facts that I think are relevant to the legal argument. Number one, what I want your honors to understand is that the subject matter of this contract, this lease that we're going to discuss, is an area between two buildings. It is a vacant area. I pointed it out and I have photographs in my brief. My opponent has photographs in his brief depicting the area in question. The second thing I want to point out is there was actually a series of agreements. There's a letter of intent. There's a 2012 ground lease. There's a 2013 purchase sale agreement. And there's a 2014 ground lease. And so just real quick on what happened, the parties entered into the 2012 ground lease. Everyone agrees on that. My client could not get financing. It turns out a bank is not going to finance $5 million construction on a banquet hall for a ground lease. It's not enough collateral. So they moved to a purchase sale agreement in 2013. In 2014, I don't dispute that everybody signed the 2014 ground lease. It was fully executed. I'll get to that more in my legal argument. But the first thing I want to argue, my first legal argument, is that the trial judge improperly granted summary judgment that the 2014 ground lease was the operative document. I want to say as clearly as I can what I'm arguing here. Because if you read my opponent's brief and my brief, it looks like we're talking past each other. What I am saying, trying to say as clearly as I can, is that the formation of a contract, whether a contract is operative or not, formation is always a question of fact. But doesn't the trial court's entry of the summary judgment merge into the final judgment, especially where the trial court made credibility determinations and rejected your argument? She said her prior determination was now supported by the evidence of trial. I think what she said at the trial was she said, I've already ruled that the 2014 ground lease is the operative document. And she said, I ruled on that as a matter of law. So what I'm arguing is that that is still fair game for this appeal. But that was an incorrect decision. And that went into trial so that my client did not have an opportunity to present evidence of what he's saying is he was duped, basically. He's saying, hey, this guy told me the 2013 purchase and sale agreement is going to be our contract. But he said, I need you to sign this 2014 ground lease for my bank. And by the way, Judge, it's a credible argument. It's credible because they already knew under the 2012 ground lease. What about the emails from Shakir? The emails involving the bank, are you saying? Yes, right. Yeah, I agree that those exist. But the point is, the point is that that was already determined at summary judgment. It was determined as a matter of law. And what I'm trying to argue is, as far as I can judge, is that the cases that we cite on this, including Lewis Connolly, the Haney case, especially the Progano case, all those cases stand for the proposition that that is a question of fact. And the judge actually decided that as a matter of law, she says, I'm going to determine as a matter of law that the 2014 ground lease is the operative document. What I'm saying is that it is a question of fact. And she did not consider the affidavit from my client in opposition to summary judgment. And the affidavit said, you know, he told me it wasn't going to be the operative document. He told me we're still operating on the purchase and sale agreement. He said, I just need this from my bank. He's saying I was tricked into signing this and the judge did not consider the affidavit. My opponent argued at summary judgment, you don't get there. You don't get to consider all those statements. And the judge agreed because there's an integration clause. But again, formation, formation is a question of fact. It should have gone to trial and it didn't go to trial. That's my first legal argument. Next, if you get to the 2014 contract, which was what happened under the 2014 contract, I'm saying there's three important terms that were misconstrued or misinterpreted by the trial judge. Number one, it's the word term. Term, capital T term is a defined word in the 2014 ground lease. And capital T term is defined to mean that the term commences only, quote, after the approved premises has passed final inspection and been approved for occupancy. That's a quote. So capital T term only begins after this banquet hall is built and there's occupancy. Now, that never happened. The banquet hall was never built. There's no occupancy. So capital T term under the 2014 ground lease never started. What the trial judge did and what my opponent argued at trial was that there's another provision, paragraph five. And I would argue that paragraph five, it's not only inconsistent, it's kind of an opposite in a part. Paragraph five says that the rent for the term, capital T, and we've already discussed term didn't start. It couldn't start because the building was never built. But rent for the term begins either after the building is built and has occupancy or 18 months after the premises are turned over. What I'm arguing is that that's an inconsistency. Those provisions, paragraph four and paragraph five are opposite. So how do you resolve that? That also affects the damages. It also does affect damages for sure, which I'm going to get into. But those are opposite. So how should that be resolved? Well, the Dowd case that we cite and the Kimball Hill case that we cite, there's no argument. They don't contest. They're the ones who drafted it. They prepared this thing. They just gave it to my client for signature. So if you agree with me that paragraph four and paragraph five are opposites, then you resolve that against them and the term never commenced. That's what the cases say. The third or the second sort of provision, what does it mean? What does the definition mean is when the lease terminate? Let's say that it began. Let's say the term did begin. Then when do obligations stop? That's the next point. There's a paragraph directly on point in the 2014 ground lease and it says, upon 30 days notice, if there's a default, by the way, if there is a default and we were supposed to start paying rent, then they give a notice. Then what happens? 30 days after the receipt of the notice, the lease shall expire and terminate as fully and completely and with the same effect as if the date were fixed for the expiration of the term or extended term in all rights of the lessee, including occupancy of the premises shall expire. And this is important. And the lessee shall be relieved of all liability for future rent or any other sums otherwise due from the date of such termination. They say we're supposed to pay rent. They did send a notice. Granted, I agree. I fully acknowledge it was called the five-day notice, but their five-day notice said that if we don't pay the rent and procure the default, that it will result in a forfeiture of the lease. That's what their notice said. What did the parties intend? What does the 2014 ground lease say? We get the notice. We don't cure it. All obligations cease at that point. And the trial judge interpreted it differently and said, no, all the obligations keep going. So your position is the rent doesn't accrue. It's a breach of the contract or breach of the lease at that point. At that point. And you can follow with me. If the term did commence, I'm arguing it didn't. But even if it did, once we get the notice and we don't cure, then at that point, all obligations stop and they get the premises back. That's what the parties agreed to. But also they did sue for possession and they got possession a couple of weeks after they sued. It was August 15th of 2016. They got an order of possession. And by law, and I cite the Robinson case, I think Robinson is good law. Robinson said, by law, if you get possession, then once they have possession, even if it didn't terminate by agreement, which it did, then by law, after they get possession, again, all obligations stop at that point. The trial judge disagreed. Finally, just under interpretation, and this is the big one, maybe I should have started with this because it's the biggest thing. The 2014 ground lease and every prior agreement says that my client may build a building, may build a building. What is your response to Villa Oaks argument though, that Shakira never argued in the trial court that Rubina was not obligated to build a banquet hall based upon the language? Yeah. Okay. So we did kind of come back with this in the reply. So what the law is, what the law is, and I cite cases, there's a couple like the People v. Perry case, the Chicago v. Lamarge case. There's a second district court case right on point, Raintree Homes. What those cases say is if the trial judge rules on that issue, it's fair game for the appeal. Meaning if we don't bring it up and the trial judge doesn't rule on that or doesn't deal with that issue, then they're correct. Then they're saying, you can't surprise us, and the trial judge didn't rule on this and you're bringing up something brand new. But if the trial- that Rubina was obligated to build a banquet hall, that makes it fair game on appeal. Right. Because she ruled exactly on this issue. And again, it's de novo review, and this is contract interpretation, de novo review, and she ruled on this issue. So it's not a surprise to my opponent that I'm arguing that that was incorrect. She ruled on this very issue. She dealt with it. So it's not being brought up for the first time here. And again, May versus Shell, it says May. The trial judge, with all due respect, I believe got this wrong and said, no, he's obligated to build the building. And she gave him $3.5 million in damages. So and then just quickly, I'll get to- Did your opponent argue that at the trial court? That they had to build the building? Yeah, my opponent, I believe, and Mr. Trial Attorney for my client, but he argued for damages, and he submitted some evidence of what the building cost. And then the trial judge took it from there. But he argued that it means obligated to and Shell, and the judge agreed with him. And so the judge entered damages based on that. So just quickly, in summary, the damages, and you don't see it often, manifest way to the evidence. That's the standard. I agree with that. But here, I think we meet that standard. And this $3.5 million for building the building, that's the whole May versus Shell issue we talked about, the architect fees of $107,000 and legal fees for $27,000. That relates directly to building the building. Then there's another category, the judge awarded $1,198,000 in future rent, going 20 years into the future. Now, we cite cases, the Miner case, the Elliott case, I could have cited a whole page of cases on this. If there's no acceleration clause in the lease, you can't accelerate the rent. But the judge accelerated the rent 20 years into the future. It's against the case law, you have to have an acceleration clause, there isn't one. My opponent isn't arguing that there is, it's just, hey, if you look at this provision, we both agree, it's not in there. There's nothing in there that speaks to acceleration. But it's also completely speculative. They got a tenant, Ross Dress for Less, a national tenant who pays more, and an initial term of 10 years. So what happens after 10 years? Do they renew? Do they get a new tenant? It's completely speculative to say, after 10 years, there's going to be a vacancy for 10 more years, and we have to pay $1,000,000 for that. But the judge awarded damages for that. Finally, on the commission- And who asked for those damages? Did your opponent at the trial court ask for the 20 years in rent? Yes, my opponent at the trial court, he presented evidence that they had a new tenant, Ross Dress for Less, what they paid for rent, which is actually more than my client was going to pay. But he argued that the term was an initial term of 10 years, and he wanted the difference, basically. And the judge gave it to him. But I'm saying that's improper, there was no acceleration clause, and it's speculative. And then finally, the commission, there's a commission to a broker to get Ross Dress for Less. If you follow my argument, I'm saying that all obligations terminated. The lease commission was substantially later than what I would say all of our obligations terminated, so we should not have been on the hook for that commission. And with that, I'll just reserve time for rebuttal unless your honors have questions for me. So what would you submit we do in our appeal? Reverse outright, reverse remand? What is your wish that we do on appeal? Well, I think that the summary judgment issue, that led into trial. And so I think the entire judgment should be reversed because at trial, the judge should have, you know, as the trier of fact, considered what was the operative document. And so we never got there. And so I think that the entire verdict gets reversed and remanded in the trial, there should be a trial, which includes that issue. And then second, even if your honors disagree with me and say, well, the 2014 ground lease is the operative document, which I disagree with, for the reasons I said, I still think that the remand should say that the verdict was against the manifest weight of the evidence, and it should be retried. Thank you, sir. You will have an opportunity for Mr. Sterling, are you prepared to proceed? I am your honor. You may proceed. Good morning. May it please the court and counsel. My name is Kevin Sterling, and I'm appearing today on behalf of the appellee Villa Oaks LLC. Before I respond to counsel's argument, I need to raise the effect of this court's dismissal of the Rubina hospitality appeal for lack of jurisdiction. Based on this court's dismissal of Rubina's appeal, the judgment against Rubina hospitality under the 2014 ground lease is now final and not appealable. Mr. Shakir remains liable for the Rubina judgment under his personal guarantee, and not necessarily the 2014 ground lease. This appeal by Mr. Shakir has raised no issues based on any errors related to his personal guarantee, only the 2014 ground lease. None of Shakir's arguments today regarding any of these alleged errors by the trial court serve to negate this now fixed liability of the Rubina judgment. And this is not a distinction without a difference. And I believe that this is wholly consistent with the court's finding that under the international supply versus the Campbell case, under his guarantee, he is liable for the judgment against Rubina hospitality, which is now fixed. That said, the appellant here today has asked this court to ignore express language in the operative documents in this case. Specifically, the appellant has asked this court to ignore the express integration clause in the 2014 ground lease, in which the tenant acknowledged that all prior agreements were superseded. The appellant is also asking this court to ignore what is a very clear two-step process set forth in the default provision, which required a notice of default, and then a notice of termination. Second, or third, rather, the appellant has asked this court to ignore the clear intent and the primary purpose of the ground lease, that being to construct a banquet hall in the shopping center. To correct. But to Mr. Dewey-X's point, pardon me if I mispronounced your name, it said he may construct a building, not shall. What is your response to that? Well, Judge Wheaton in, well, one, I believe that the court did review the totality of the ground lease, the purpose and the intent of the ground lease. I can't deny the word says may, but my client, notwithstanding Mr. Dewey-X's recitation of the facts, tore down a part of his shopping center, tore down revenue-producing spaces to the, and relocated tenants within the shopping center. Yeah, there's no question about that, but he had to anticipate that that's what he was going to have to do. Should he not have buttoned up that clause in the agreement before he did that? And merely because of what he did and what you feel his intent was. That's not the language of the agreement says, is it? It does say may. At the time- There were always anticipated issues with financing. So that's why the term may was used, isn't it? Because it was uncertain. And doesn't the term may express uncertainty? It implies discretion. Permissive, in other words. The construction, based on the testimony that was provided at trial, did commence, even though the financing had not been obtained. The site was cleared. Plans were well underway. Mr. Shakir went at great lengths to talk about materials and the steel that he ordered for the site. And the court, the trial court, I think properly found that viewing the totality and the four corners of the ground lease, that there was an expectation and that the development of this ground lease was, I'm sorry, of the banquet hall was underway. Isn't it basically a given that any ambiguity is to be looked upon in favor of the lessee, not the lessor? I believe it is as to the drafter, which Mr. Shakir was represented by council. This was a negotiated ground lease. And to that extent, and I also don't find the term necessarily ambiguous, but I believe that given- If it's not ambiguous, what does may mean? May is permissive. May is a permissive word. However, viewing the ground lease in its totality, viewing the ground lease in totality, I believe that that issue was resolved by the trial court based on the evidence. Additionally, it's our position that this argument was never raised at trial. And I believe that your honor asked that question to Mr. DeWittiak. It was not raised at trial. They never challenged the obligation of Rubina Hospitality to construct this banquet hall. But the trial court addressed it, correct? The trial court in the ruling addressed it. The trial court addressed this in the calculation of the damages regarding the expectancy of the parties under the ground lease. Effectively, that Villa Oaks was going to get the benefit of its bargain, that at the end of the 20-year ground lease, it was going to get a building, which Rubina Hospitality committed to build. However, Mr. DeWittiak, in his reply brief, cites to the record, which frankly does not support, that in closing arguments, Mr. Culbertson, the trial attorney, never raised this. There was no evidence presented. The word may versus shall was never raised at the trial court. It's our position that they, notwithstanding the fact that I believe Judge Wheaton properly addressed this issue, I also believe that they frankly waived this argument at trial. Can you address the issue that there was a material issue of fact regarding formation and the trial court erred in entering summary judgment? There should have been a trial on that issue. I can. Number one, the summary judgment claim that was raised in the appeal, I believe that this court did not acquire jurisdiction over that issue because the summary judgment was entered on Rubina Hospitality's breach of contract claim against Villa Oaks. The court found that that agreement, the purchase and sale agreement, was superseded by the 2014 ground lease, based on the express language of the 2014 ground lease, and that I believe that Judge Wheaton properly disregarded the claim by Rubina Hospitality that it was somehow duped into signing this ground lease. Again, Rubina Hospitality and Mr. Counsel in the negotiation and the ground lease. The other thing that Counsel failed to mention is that Judge Wheaton made a specific- What about Shakir's affidavit? Didn't that raise an issue of fact? Well, one, I believe his affidavit was not supported by the evidence in the case, and two, I believe that his affidavit, if the judge considered that, I query that everybody being held to a contract would say, I did not intend to be bound, even though in his request to admit, it acknowledged signing the ground lease. The document itself is a four corners approach. The document says what it says. It says all other agreements are superseded. Otherwise, anybody could file an affidavit to try to create an issue of fact. Aside from a lack of credibility, which Judge Wheaton noted, anybody could then sign an affidavit to try to- A self-serving affidavit to create an issue of fact. The fact is that Mr. Shakir, in his deposition and in his testimony at trial, did attempt to raise this sham lease argument, the fake lease, and it just doesn't hold water. In addition to that, Judge Wheaton, at the summary judgment hearing, reviewed the timeline of events. The fact that the financing happened months before the lease was executed, it just didn't hold water. Aside from the credibility issues, if you review the four corners of the agreement, the court properly excluded any extrinsic evidence. Mr. Sterling, being mindful of your time, I'm going to ask you to move on to the damages issue. Certainly. Regarding the damages, it's our position that the lease did commence, that the provisions are wholly consistent regarding the term, because the premises, that being the land, was turned over to the tenant at the time the ground lease actually had been executed. He had previously taken possession under the purchase and sale agreement and erected a fence. The obligation to pay rent began. Doesn't the lease say that when he stopped paying rent, then the lease terminated? My question is, how is it possible that she found that the rent continued to accumulate for the next 20 years? Well, that's not what the agreement says. It's a two-part answer. Part one is the notice of default. One, he never started paying rent to begin with. Second, it's a two-step process in the default. Part one is notifying them of the default, and the notice of default said we will terminate the lease. It didn't say we are terminating the lease, and that is the distinction of the case that was cited by my opponent. I believe the... Well, whether they say that or not, the lease was terminated once they're not paying, and then they put somebody else in their place. I mean, whether they say we will terminate the lease or the lease is terminated, how is it not terminated? Well, their possession was terminated, but until we executed a substitute lease, I believe the rent and the lease obligations continue under the Forcible Entry and Detainer Act because there was no... How is that equitable? Well, it is getting my client the benefit of its bargain by tearing... My client did what he was obligated to do under the ground lease by providing the site and essentially removing this property from the market. I believe the damages are consistent with my client obtaining the benefit of his bargain. So I don't know if that addresses the courts. I mean, and Judge Wheaton, we went through a very detailed calculation based on the rent expectancy, less the mitigation efforts by my client, which included now needing to build a building to have rent-producing space on the property again. So again, the rent number was never objected to at trial. All they claim is that the lease terminated as of the date we obtained possession. But counsel cites to the Robinson case, but I believe that the facts of that case are wholly distinguishable. That was in the context of an assumption of a lease by a bankruptcy trustee. And the court recognized that after a judgment of possession, only the landlord is in a position to prevent the forfeiture. But in this particular case, this was a lease assumption issue by a bankruptcy trustee. But when you say she was very thorough in her compilation of damages, how could really your opponent have anticipated that she would have come up with the cost of rebuilding or cost of building when that was not obligated in the contract or the lease? Well, I believe that it was based on the totality of the lease and the circumstances surrounding the party's relative performance under the ground lease that it was the intent of the 2014 ground lease to construct the building after my client demolished portions of his building to accommodate this development. Thank you, Mr. Sherman. What about the argument? Oh, go ahead, Justice Burkett. Just briefly, the language in the 2014 ground lease that says on expiration that all rights of the lessee, including occupancy of the premises shall expire, etc., including liability for any future rent. I'm sorry, upon expiration? Yes. I mean, the language in the 2014 ground lease, once the lease is terminated, Rubina is relieved of any future rent or any other sums otherwise due from the date of termination. And the building goes back to your client? Correct. One, I think we addressed the issue of the building coming back to my client. But with regard to the rent, I believe that the lease was not terminated. The lease obligation continued and that the tenant, Rubina Hospitality, was liable for the rental stream, less our mitigation efforts with the new lease. Thank you, sir. Thank you, Your Honor. Counsel, you may proceed with rebuttal. Thank you. And just very briefly. First, there's a point that counsel raised, which I agree is very interesting. Isn't it interesting that the owner of the property claims to have torn down a wall or two walls and replaced or tenants? That could have been interesting. I mean, that is actually what the case could or should have been about. What were those costs? Who paid those costs? And if he's saying, I relied on you to do this ground lease, and I'm out of pocket $20,000 or whatever to move these tenants. Okay. But that absolutely was never part of the trial. There's no, they never made a claim for those reliance damages or actually what he's out of pocket for this agreement. Instead, what I'm arguing is he got a windfall. He's got a vacant area. And honestly, is that really the agreement? Hey, if you build a banquet hall, great, then you pay me rent and all of that. But if you don't, if you don't get your financing, you're going to owe me $5 million for a vacant part of my property for signing a ground lease? Really? That's what happened. And I have the utmost respect 20 years practicing in front of Judge Wheaton, and she's an amazing judge. I just think in this instance, that was a windfall and against the manifest way to the evidence. And then also, I guess, going back to the whole issue of what Mr. Sterling said about, hey, anybody could sign an affidavit. If you agree with my argument that summary judgment should not have been entered, then anybody can sign an affidavit saying, hey, the contract isn't formed and they would win every time. That's not what I'm arguing, and that's not what the cases say. You have to have actual evidence. You have to have an affidavit. You have to have a good faith basis that an opponent or someone in opposition to summary judgment could say the contract was not formed in this case, and these are my reasons and for being self-serving or conclusory or not properly based. But that's not here. That's not this case. In this case, my client was arguing that the 2014 ground lease was not an effective document, and it was meritorious because we already knew he can't get financing for a ground lease. No bank is going to finance a $5 million building for a ground lease. So it was meritorious. It was an affidavit that should have been considered. It was actual evidence in opposition to summary judgment, and the judge says I'm going to ignore it. And again, in determining formation of a contract, that's a question of fact, and that's why I think Judge Wheaton respectfully got it wrong, and that's my argument today. Thank you very much. Gentlemen, thank you very much for taking the time out of your day to join us for Oral Arguments. We will take the case under consideration and render a decision in due course. Have a great day. Thank you, judges. Thank you, justices.